FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

2016 MAR 25  AM 11:49

Case No.: 6:16-CV-519-OR-37KRS

UNITED STATES OF AMERICA, ex rel.,
BILLY M. SPRAGUE,

       Plaintiff/Relator,

v.

ROCKET LAB LTD., a/k/a ROCKET LAB
USA, INC.

**FILED UNDER SEAL PURSUANT TO
31 U.S.C. § 3730(B)(2)**

       Defendant.
_____/

COMPLAINT UNDER THE FALSE CLAIMS ACT
(31 U.S.C. § 3730(b)(2))

COMES NOW, Plaintiff/Relator, Billy M. Sprague, and hereby files this complaint against Defendants pursuant to the False Claims Act, 31 U.S.C. §3730(b)(2) and further states as follows.

I.  **Introduction and Summary of Allegations**

1. This matter involves a fraud on the government perpetrated by a foreign entity masquerading as a company based in the United States in order to qualify as a bidder for a National Aeronautics and Space Administration (NASA) contract. Under the guise of a domestic company, Rocket Lab Ltd., a/k/a Rocket Lab USA, Inc. ("Defendant" or "Rocket Lab Ltd.") successfully bid on a NASA contract worth $6.95 million in September 2015.

2. The NASA Kennedy Space Center solicitation sought companies to bid on a contract to provide launch services for small satellites (a/k/a nanosatellites). The posting specifically stated that only domestic launch service providers in accordance with federal law could submit bids.[1] Defendant, a New Zealand corporation, knowingly submitted documentation that was false or misleading to NASA in violation of federal law (Title 18 U.S. Code § 1001) solely in order to qualify, and eventually win the solicitation.

3. Specifically Defendant represented that Rocket Lab USA, Inc. was physically located in Frederick, Colorado on forms submitted through the government's System and Award Management (SAM) system that is used to register entities to bid on Department of Defense and NASA contracts. When in fact, Rocket Lab USA, Inc. was not incorporated in Colorado, nor was it registered with the Colorado Secretary of State for doing business in Colorado.

4. Defendant claimed also that Rocket Lab USA, Inc. maintained its place of business as being in Frederick, Colorado while in fact this address is a private residence. Additional forms submitted to the SAMs system by Defendant claimed that Rocket Lab USA,

---

[1] 51 USC 50131 Commercial Space Act of 1998

Inc. conducted business in the state of California. Relator determined that the California address was only used to receive mail directed to Defendant, and any mail sent to this address was then directly forwarded to New Zealand.

5. The development and manufacturing of rocket components requires a large team of workers, and, adequate space and tooling. No actual employees who worked for Defendant were at the California location or at any other location in the United States. In fact, Defendant employed only one person in the United States.

6. NASA evaluated multiple bids which were submitted on the project and ultimately selected three companies to provide launch services for U-Class satellites under the Venture Class Launch Services (VCLS) program. The VCLS is part of NASA's CubeSat Launch Initiative.

7. In announcing the awards to the three companies, NASA's public affairs section briefly described the three companies and their locations. In this announcement Rocket Lab USA, Inc. was described as being located in Los Angeles, California which was only a mail forwarding service

8. The domestic source criteria for the NASA contract were written into the request for proposal (RFP) and were subject to the terms and conditions of federal acquisition regulations (FAR).

9. The failure to comply with the domestic source criteria "may be grounds for termination for cause."[2]

10. The domestic source criteria requires that the controlling interest (ownership) of the company must be equal or greater than 51% and that at least 50% of the technical design

---

[2] See FAR 52.212-4(m) and RFP, page 30, section 4.3 (a).

work be performed in, and 50% of the components be mined, produced or manufactured in, the United States.

11. Defendant clearly did not meet the requirements for this contract and should not have been permitted to bid on the NASA contract, much less receive the award.

12. Defendant provided false information to NASA that resulted in the awarding of a contract to Defendant for $6.95 million.

## II. Parties

### A. Relator

13. Under the FCA, a person with knowledge of false or fraudulent claims against the government (a "relator") may bring an action on behalf of the government and themselves.

14. Billy M. Sprague is a resident of Fort Collins, Colorado. Mr. Sprague founded and is the CEO and Design Chief of AERA Space Technologies, Inc. His company designs, develops, tests, deploys and operates launch services focusing on commercial space utilization. Mr. Sprague has worked more than 38 years in space technology and related industry. AERA Space Technologies, Inc. was one of seven companies that bid on the Venture Class Launch Service (VCLS) contract.

15. Relator is an original source of information within the meaning of the False Claims Act, 31 U.S.C. §3730(e)(4)(B).

### B. Defendant

16. Rocket Lab Ltd. was founded by its current CEO Peter Beck and it is headquartered in Auckland, New Zealand. Rocket Lab Ltd. is deeply involved in commercial space and rocket systems. Rocket Lab Ltd.'s website now indicates that the New Zealand operation is the subsidiary of Rocket Lab USA, Inc. CEO Beck founded Rocket Lab Ltd. in

2007. It is purportedly a privately funded company with financial backing by the New Zealand government.

17. Defendant has been awarded several contracts in the past within the United States. In 2010, Defendant was awarded a Defense Advanced Research Projects Agency (DARPA) contract for a project related to the Office of Naval Research. The contract (N629091017087) was awarded to Rocket Lab Ltd. in the amount of $102,999. The contract was phase one of three potential phases. Defendant may have been awarded a contract on phase two of the contract. It is not known if this contract had a domestic source requirement.

18. In 2011, Defendant was a subcontractor to L2 Aerospace that developed a hand held, rocket launched unmanned aerial vehicle. The contract was named the Rapid Deployed Rocket System. In a press release by Defendant and L2 Aerospace, Defendant is identified as a New Zealand based aerospace company.

### III.  Jurisdiction and Venue

19. The acts complained of herein, and proscribed by 31 U.S.C. S 3729 *et seq.* occurred in the Middle District of Florida at the Kennedy Space Center that is located in the Middle District. Therefore, this Court has jurisdiction over this case pursuant to 31 U.S.C. 3732 (a), as well as under 28 U.S.C. § 1345 as the United States is the real party in interest.

20. Venue is proper in this District pursuant to 31 U.S.C. § 3732(a), and 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, and the subject of the solicitation was based in this District.

21. This Court has jurisdiction of the subject matter of this action pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1331.

22. The facts and circumstances alleged in this complaint have not been publicly disclosed in a criminal, civil or administrative hearing, nor in any congressional, administrative, or government accounting office report, hearing, audit investigation, or in the news media.

23. Relator is an "original source" of the information upon which this complaint is based, as that term is used in the False Claims Acts relied on herein and have otherwise complied with all conditions precedent to bringing this action.

## IV. The Nature of the Case

24. Relator's company was one of seven companies that bid on a NASA Kennedy Space Center contract in 2015. NASA's Launch Services Program was seeking to develop alternatives to the rideshare approach to transporting U-Class payloads into orbit.[3] NASA had been sending U-Class payloads (nanosatellites) on a rideshare basis on launches as secondary payloads and was seeking out new markets in commercial space utilization. NASA was seeking to develop launch services dedicated to transporting 60 kilogram (kg) payloads.

25. The Request for Proposal (RFP) issued by NASA outlined contract terms and conditions to companies submitting bids that included factors that NASA would evaluate in selecting and awarding the contractors. The factors considered were the technical and management capability of each bidder, past performance and price. The Venture Class Launch Service (VCLS) solicitation was a firm fixed price launch services contract that resulted in seven companies bidding for the contract. The bidders were:

- AERA Space Technologies, Inc.
- Firefly Space Systems
- Interorbital Systems
- Orbital ATK
- Rocket Lab USA, Inc.
- Virgin Galactic, LLC
- Zero Point Frontiers Corporation

---

[3] U-Class payloads are small payloads ranging in size from 1kg to 180 kg.

### A. NASA Contract Fraud

26.  On or about September 25, 2015, and in accordance with the Federal Acquisition Regulations (FAR), contracting officer Norman Wolfinger, along with the Source Selection Authority determined that four companies were within the competitive range for the launch services contract.

27.  NASA eliminated one of the competitive bids (Interorbital) and selected Firefly Space Systems, Rocket Lab USA, Inc. and Virgin Galactic, LLC as recipients of the contract awards. Rocket Lab USA, Inc. was awarded $6.95 million, Firefly Space Systems was awarded $5.5 million and Virgin Galactic, LLC was awarded $4.7 million.

28.  NASA contracting officer Wolfinger authored the announcement of the winning bids in a document entitled "Selection of Contractors to Provide Launch Services for NASA's Venture Class Launch Services." On page one, it states in part:

> *This acquisition was conducted using other than full and open competitive procedures in accordance with Federal Acquisition Regulation (FAR) 6.302-5, "Authorized or required by statute." The Commercial Space Act of 1998, 51 U.S.C. § 50131, requires that all commercial space transportation services be procured from domestic partners.*

29.  The RFP for the VCLS (NNK15542801R) fully described the criteria for offerors in regards to domestic source matters. On page 30, section 4.3 Domestic Source Criteria, it provides the following (emphasis added):

(a) In addition to the certification regarding United States commercial provider of space transportation services (Public Law 105-303, Title II, Section 201), the Contractor shall continue to comply with *domestic source criteria*. Failure to comply with the criteria may be grounds for "Termination for Cause" in accordance with FAR 52.212-4(m).

(b) *Participation in this procurement is restricted to prime Contractors from the United States launch vehicle/services industry.* "United States industry" means any corporation, partnership, joint venture, association, or other entity which is

organized or existing under the laws of the United States or any State, and whose controlling interest is held by United States citizens. "Launch services" means all services required in the performance of this contract, excluding those necessary to produce or manufacture launch vehicles, its components and other equipment and facilities required in the performance of the contract. "Controlling interest" means ownership of an amount of equity in such entity sufficient to direct management or to void transactions entered into by management. Ownership of at least fifty-one (51) percent of the equity creates a rebuttable presumption that such interest is controlling.

(c) The Contractor shall provide in the performance of this contract launch vehicles that are domestic end products. *The launch vehicle shall be a domestic end product only if the cost of its components, mined, produced or manufactured in the United States exceeds 50 percent of the cost of all its components.* The cost of each component includes transportation costs to the place of incorporation into the launch vehicle and any applicable duty (whether or not a duty-free entry certificate is issued). "Components," as used in this contract clause, means those materials and supplies directly incorporated into the end product.

(d) The Contractor shall provide, in the performance of this contract, domestic launch services. *Launch services shall be considered to be domestic if the cost for launch services performed by United States industry sources exceeds 50 percent of the cost of the total required launch services.*

30. Relator was familiar with all of the companies that had submitted bids for the VCLS solicitation. Government contracts are highly competitive and Relator researched each of them in order to determine any vulnerability or issues these companies would have that could eliminate them as a qualified bidder. Based on Relator's research and his extensive experience in the launch vehicle design, development and operations industry, he knew that Defendant was designing, developing and fabricating their launch vehicles in New Zealand, as Defendant did not have manufacturing and design plants within the United States. A review of Defendant's website revealed mission and space related work being done in Auckland, New Zealand.

31. In early October 2015, Relator reviewed the award information for Rocket Lab USA, Inc. that was posted by NASA.[4] The contractor was identified as Rocket Lab USA, Inc.

---

[4] Exhibit 8 Note: The NASA Acquisition Internet Service is a world-wide web service that provides access to current acquisition information (https://prod.nais.nasa.gov).

and was purportedly located in Frederick, Colorado. A search of the Colorado Secretary of State corporate listings which are available online revealed that Rocket Lab USA was not incorporated in Colorado and the name, Rocket Lab USA was available.

32. In order for a company or individual to bid on a Department of Defense (DoD) or NASA contract, an entity was required to register with Dun and Bradstreet and obtain what is commonly referred to as a DUNS number. Entities would utilize the DUNS number when accessing and registering in the governments System for Award Management (SAM) system.[5]

33. The government relies upon the information and certification in the SAM system to accept bids and award contracts. The SAM system requires certification for entities bidding on contracts to include entity names, representations and certifications, points of contact, service contract reports, any active or inactive exclusions and core data on each entity. When submitting these documents, a certification must be made attesting to the accuracy of the representations and certifications submitted that included reading each Federal Acquisition Regulation (FAR) and Defense Federal Acquisition Regulation (DFAR) that were listed. Entities can be penalized for misrepresentations and are subject to civil and criminal charges under US laws.

34. Relator utilized his Dun & Bradstreet account and determined that Defendant had identified Rocket Lab USA, Inc. as being located at 3419 Cottonwood Circle Frederick, Colorado. This address is associated with an individual, Bradley Schneider, and is located within a residential area of Frederick, Colorado.[6] Relator knew that in order to design, develop, and fabricate a rocket meeting the requirements of the VCLS contract a large facility would be required with additional areas needed for testing of rocket engines and other components.

---

[5] http://www.sam.gov
[6] A LexisNexis search of this address revealed that the properties land use is noted as single family residential. It also appears that this address also used the cities of Firestone and Longmont, Colorado at one point in time.

35. Relator reviewed Rocket Lab USA, Inc.'s SAMs submissions and determined that Mr. Schneider was the executive vice president, general manager and government business contact for Rocket Lab USA, Inc. A review of the SAMs entity record reflected that the physical address of Rocket Lab USA, Inc. is 3419 Cottonwood Circle Frederick, Colorado 80504 and it also disclosed a mailing address of 6601 Center Drive West Suite 500-506 Los Angeles, California.

36. The SAM submission under the category "Review Representations and Certifications," was certified and attested to by Mr. Schneider. This certification requires him to certify that he has reviewed the FARs and DFARs. Page one provides the prohibition on contracting with inverted domestic corporations. It defines an inverted domestic corporation in part, as a *"foreign incorporated entity"* unless an exception is met under section 9.108-2.[7] Section 9.108-2 prohibits the use of appropriated funds from 2010 by any foreign incorporated entity that is treated as an inverted domestic corporation. The exceptions relate to fiscal year funding prior to 2010 and Defendant did not qualify for an exception.

37. Defendant certified that the place of performance for the contract would not occur at a place different than the address indicated on its submission. FAR 52.215-6 (place of performance) states, in part:

> *(a) The offeror or respondent, in the performance of any contract resulting from this solicitation, intends (box not checked) does not (box is checked) intend to use one or more plants or facilities located at a different address from the address of the bidder as indicted in this bid.*

38. It would be impossible for Defendant to develop and build the components needed for the NASA contract from a residential address in Colorado or at a mail forwarding

---

[7] Federal Acquisition Regulation 48 CFR 9.108-2.

facility in Los Angeles, as a large team of engineers and workers to build the rocket would be required.

39. Typically, a two-stage rocket would be built that would be approximately 6 feet in diameter and approximately 70 feet long.

40. Other than Bradley Schneider, Defendant has no other employees located in the United States.[8] Defendant does identify the following employees as being employed by Rocket Lab USA, Inc., but all of them actually work in Auckland, New Zealand on the NASA contract:

- Stefan Brieschenk - Vehicle Testing Team Lead
- Stephen Bornstein - Vehicle Engineer
- Matteo Bartolin - GNC and Safety Engineer
- Dario Spalotta - GNC Engineer
- Ian Curtis - Launch Range Engineer
- Shaun D'Mello - Launch Range Lead
- David Broadbent - Vehicle Test Engineer
- Vikram Udyawer - Launch Range Engineer
- Ivan Vuletich - Range Safety Consultant
- Jonathon Kerkhofs - Avionics Test Engineer
- Jendi Kepple - Launch Engineer
- Soloman Westerman - Guidance, Navigation and Control Guru

41. Relator instructed a friend of his, Mark Caviezel, to check out the California business address that was used in the submission to SAMs by Mr. Schneider. Mr. Caviezel visited the Rocket Lab address in Los Angeles on or about December 4, 2015. Mr. Caviezel informed Relator that Rocket Lab USA, Inc. was located in a seven story office building adjacent to the Howard Hughes Center. Mr. Caviezel went to the address and asked the receptionist if Defendant's CEO Peter Beck was present. Mr. Caviezel was told that Mr. Beck was not there and in addition, the receptionist told him that no one from Rocket Lab USA, Inc. was ever

---

[8] Bradley Schneider appears to provide consulting services to Defendant to include support on government contracts.

present at this location. The receptionist told Mr. Caviezel that they only received mail for Rocket Lab USA, Inc. and that any mail received was forwarded to an address in New Zealand.

42. Relator conducted a search of the California Secretary of State Business entity site and found two entries for Rocket Lab. An entry for Rocket Lab filed on May 7, 2014 was listed as "dissolved." An entry for Rocket Lab, LLC was listed as "suspended." Relator registered Rocket Lab USA, Inc. (the company that he had incorporated) on November 17, 2015 with the California Secretary of State as a foreign company and the status of this company is currently listed as active.

43. Rocket Lab USA, Inc. was incorporated in the state of Delaware but was not conducting business in that state.

## V. Damages

44. Defendant used its prior business relationship and work on contracts to convince NASA that it was qualified to submit a bid on a space technology contract, when in fact it was not. Defendant engaged in a course of fraudulent conduct to create a nonexistent shell corporation that acted as a viable, functioning and capable domestic corporation. As such, Defendant should be required to return any and all funds received by NASA in connection with this contract. Additionally, it appears that another recent contract awarded to Defendant that was valued at $99,964 was obtained by Defendant submitting false information to the United States by stating it qualified under the Small Business Innovation Research Program. In total, Defendant falsely obtained approximately $7,049,964 that was intended for domestic companies competing in the commercial space industry.

## VI. The False Claims Act

45. The FCAs, as amended, provide in pertinent part that:

> [A]ny person who (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; ... or (G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government, is liable to the United States Government for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990...plus 3 times the amount of damages which the Government sustains because of the act of that person. 31 U.S.C. § 3729(a)(1).

46. The terms "knowing" and "knowingly" in the FCA provision above "mean that a person, with respect to information (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A). No proof of specific intent to defraud is required. 31 U.S.C. § 3729(b)(1)(B).

## VII. The Space Act - 51 U.S.C. §50131

47. The regulations covering the contracting of goods and services for NASA are largely contained in the Space Act which provides:

> "a) In General. Except as otherwise provided in this section, the Federal Government shall acquire space transportation services from United States commercial providers whenever such services are required in the course of its activities. To the maximum extent practicable, the Federal Government shall plan missions to accommodate the space transportation services capabilities of United States commercial providers.

> (c) Agreements With Foreign Entities.—Nothing in this section shall prevent the Administrator from planning or negotiating agreements with foreign entities for the launch of Federal Government payloads for international collaborative efforts relating to science and technology.

## VIII. Federal Acquisition Regulation 48 CFR 9.108-2 Prohibition

48.     In addition to the Space Act, the Federal Acquisition Regulations (FAR) also control NASA purchases and contracts as an agency of the Federal government.

49.     FAR contains certain limitations and prohibitions, notably at 48 CFR 9.108–2 which provides:

> "Prohibition:
> (a) Section 740 of Division C of the Consolidated Appropriations Act, 2010 (Pub. L. 111–117) prohibits the use of 2010 appropriated funds for contracting with any foreign incorporated entity that is treated as an inverted domestic corporation, or with a subsidiary of such a corporation. The same Government wide restriction was also contained in the Fiscal Year 2008 and 2009 appropriations acts. Agency-specific restrictions on contracting with inverted domestic corporations also existed in FY 2006 and FY 2007 appropriations for United States Departments of Transportation and Treasury, Housing and Urban Development, the Judiciary and Independent Agencies (including Public Laws 109–115 and 109–289)."

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### False Claims Act: Presentation of False Claims
### 31 U.S.C. § 3729(a)(1)(A)

50.     Relator repeats and incorporates by reference the allegations contained in Paragraphs 1 through 49 of this Complaint as if fully set forth herein.

51.     By and through the fraudulent schemes described herein, Defendant knowingly presented or caused to be presented false or fraudulent claims to the United States for payment or approval in the form of invoices for payment on the contract which was obtained under fraudulent pretenses.

52.     The United States paid the false claims described herein.

53.     Defendant's fraudulent actions described herein have resulted in damage to the United States equal to the amount paid or reimbursed by the United States through NASA for such false or fraudulent claims.

**WHEREFORE**, Relator, on behalf of the United States of America, demand judgment against the Defendant, ordering that:

a) Pursuant to 31 U.S.C. § 3729(a), Defendant pay an amount equal to three times the amount of damages the United States of America has sustained because of Defendant's actions, plus a civil penalty of not less than $5,500 and not more than $11,000 or such other penalty as the law may permit and/or require for each violation of 31 U.S.C. § 3729, *et seq*;

b) Relator be awarded the maximum amount allowed pursuant to 31 U.S.C. §3729(d) of the False Claims Act and/or any other applicable provision of law;

c) Relator be awarded all costs and expenses of this action, including attorneys' fees as provided by 31 U.S.C. § 3729(d) and any other applicable provision of the law; and,

d) Relator be awarded such other and further relief as the Court may deem to be just and proper.

## SECOND CAUSE OF ACTION
### Making or Using False Record Statement to Cause Claim to be Paid
### (31.S.C. § 3729(a)(1)(B))

54. Relator repeats and incorporates by reference the allegations contained in Paragraphs 1 through 49 of this Complaint as if fully set forth herein.

55. As particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein the Defendant has knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims in violation of 31 U.S.C. § 3729(a)(1)(B).

56. Defendant knowingly made or used false records or statements material to a false or fraudulent claim or to get a false or fraudulent claim paid or approved by the United States, to wit:

   a) By submitting false statements through the governments System for Award Management system that falsely stated that Defendant was conducting business in Colorado; that Defendant was not a foreign incorporated entity; and that Defendant certified that it had complied with FAR and DFAR regulations.
   b) False statements regarding the ownership, residence, or domicile of the bidder
   c) False certifications on SAMs and subsequent bid and contract materials
   d) False representations in support of their response to NASA's Request for Proposal or Invitation to Bid.

57. By virtue of the false records or statements Defendant made or used, the United States Government has suffered substantial monetary damages.

**WHEREFORE**, Relator, on behalf of the United States of America, demands judgment against the Defendant, ordering that:

a) Pursuant to 31 U.S.C. § 3729(a), Defendant pay an amount equal to three times the amount of damages the United States of America has sustained because of Defendant's actions, plus a civil penalty of not less than $5,500 and not more than $11,000 or such other penalty as the law may permit and/or require for each violation of 31 U.S.C. § 3729, *et seq*;

b) Relator be awarded the maximum amount allowed pursuant to 31 U.S.C. §3729(d) of the False Claims Act and/or any other applicable provision of law;

c) Relator be awarded all costs and expenses of this action, including attorneys' fees as provided by 31 U.S.C. § 3729(d) and any other applicable provision of the law; and,

d) Relator be awarded such other and further relief as the Court may deem to be just and proper.

**TRIAL BY JURY IS HEREBY REQUESTED**

Dated this 25th day of March, 2016.

Respectfully submitted,

BY: _____
James D. Young (FBN 567507)
jyoung@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
76 S. Laura Street, Suite 1200
Jacksonville, FL 32202
(904) 361-0012 Telephone
(904) 361-4307 Facsimile

John Yanchunis (FBN 324681)
jyanchunis@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
201 North Franklin Street, 7th Floor

Tampa, Florida 33602
(813) 318-5169 Telephone
(813) 222-4793 Facsimile

*Attorneys for Plaintiff/Relator*